## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUPERGOOP LLC, | |
|               Plaintiff, | Case No. _____ |
|    v. | |
| FIVE BELOW, INC. | **COMPLAINT** |
| and | |
| iWORLD LLC d/b/a I World Global LLC, | |
|              Defendants. | |

Plaintiff Supergoop LLC ("Supergoop" or "Plaintiff"), by and through its attorneys, as and for its Complaint against Defendants Five Below, Inc. and iWorld LLC d/b/a I World Global LLC ("iWorld") (collectively, "Five Below" or "Defendants"), allege, based on its knowledge, information, and belief formed after a reasonable inquiry pursuant to Rule 11 of the Federal Rules of Civil Procedure, as follows:

## NATURE OF THE ACTION

1. This is an action for trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. Unfair 1125(a), registered trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, federal trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), unfair competition and trademark infringement under the common law of the State of New York, and trademark dilution under New York statutory law, arising out of Defendants' unauthorized use of a confusingly similar trade dress and trademark to Plaintiff's nationally and internationally-recognized trade dress for

Plaintiff's SUPERGOOP! SPF skincare and cosmetic products and its federally registered, incontestable trademarks SUPERGOOP! and *Supergoop!* in connection with offering competing SPF skincare and cosmetic products, and thereby trading off of the goodwill and reputation of Plaintiff's trade dress and SUPERGOOP! mark.

## INTRODUCTION

2.     For twenty years, Supergoop has been changing the way the world thinks about sunscreen. As an innovative market disruptor, Supergoop is on a mission to incorporate the daily use of SPF into all human lives.

3.     Supergoop was founded with the goal of changing the world after the founder's close friend was diagnosed with skin cancer at the age of 29.  At the time, sunscreen products on the market were generally thick, chalky, undesirable for regular use, and marketed seasonally for use only during prolonged sun exposure.

4.     The combination of statistics showing the staggering prevalence of skin cancer, the research showing that incremental sun exposure over the course of a lifetime constitutes the primary cause of skin cancer, the miraculous ability for SPF lotion to prevent such a deadly disease, and the shortcomings of the sunscreen market at the time, led the founder to create sunscreen products for everyday use.

5.     In 2005, Supergoop was born, and Supergoop's mission-driven approach to SPF product development has changed the sunscreen, cosmetics, and skin-care industries.

6.     Since 2005, Supergoop has used continuously the SUPERGOOP! housemark in connection with its high-quality, pioneering SPF products, including *inter alia*, sunscreen

application products, cosmetics containing sunscreen, lip balms, skin serums, face and body

lotions, and eye and hand creams, all with SPF protection (the "SUPERGOOP! Mark").

7.     Today, Supergoop offers 40+ product options, all bearing its stylized

SUPERGOOP! housemark **Supergoop!** characterized by a blue handwriting-style script with a

larger "S", followed by lower-case letters, and concluding with an exclamation point (the

"SUPERGOOP! Logo").

8.     The SUPERGOOP! family of products share distinct qualities in their packaging.

For example, the SUPERGOOP! trade dress includes, *inter alia*, the prominent display of the

stylized **Supergoop!** Logo in blue in the upper part of every product package and product

container centered above the product name, a clear or white bottle, a yellow cap, and the SPF

number contained immediately below the product name within a circular design (the

"SUPERGOOP! Trade Dress"), as shown in the following examples:



9.      Since its launch in 2005, Supergoop has continuously used its Supergoop name, SUPERGOOP! Trade Dress, and SUPERGOOP! Logo nationwide to identify an ever-expanding line of high-quality SPF skincare and cosmetic products.

10.      As a result of Supergoop's decades of use and promotion of the SUPERGOOP! Trade Dress, SUPERGOOP! Logo, and Supergoop name throughout the United States, along with its extensive commercial success and consumer and industry recognition, the SUPERGOOP! Trade Dress and SUPERGOOP! Logo have become strong, well-known symbols to the consuming public of the popular SPF skincare and cosmetic products offered by Supergoop.

11.      On information and belief, in or around April 2025, Five Below began selling nationwide at Five Below retail stores a line of copycat sunscreen products under the mark SUGARGIRL! (the "Infringing Mark"), as depicted below, imitating the SUPERGOOP! Logo and SUPERGOOP! Trade Dress in ways clearly designed to generate a market for Five Below's products that would not otherwise exist and to cause consumer confusion (the "Infringing Trade Dress"). Five Below has also copied Supergoop's registered GLOWSCREEN product name and mark by identifying its directly competing product by the confusingly similar name and mark GLOWY FACE SCREEN (the "Infringing GLOWY FACE SCREEN Mark").  The copycat SUGARGIRL! Infringing Trade Dress goes so far as to mimic the font in which Supergoop's product names are represented, Supergoop's selective use of iridescent ink for various of its product names, and the inclusion of brief product descriptors presented in all caps in a smaller font located directly below its product names.

**Five Below's Infringing Trade Dress and Mark**



12.     Defendants' imitations of Supergoop's SUPERGOOP! Trade Dress and
SUPERGOOP! Logo are designed to, and are likely to, cause consumer confusion regarding the
source, association, connection, or affiliation of the parties' respective products.

13.     In today's sunscreen and skincare industry where there are so many competing
products, product trade dress is critically important.

14.     Supergoop has invested considerable creative and financial resources and has
spent decades building its renowned SUPERGOOP! brand, at the center of which is its
SUPERGOOP! Logo and SUPERGOOP! Trade Dress.  Five Below's imitations of Supergoop's
iconic SUPERGOOP! Logo and SUPERGOOP! Trade Dress has and will, unless enjoined,
irreparably damage Supergoop and the goodwill that it has worked tirelessly to develop over the
past almost two decades.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over Plaintiff's Lanham Act claims
pursuant to 15 U.S.C. § 1121 (trademark) and 28 U.S.C. §§ 1331 (federal question) and 1338

(trademark). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16.     Defendants are subject to the personal jurisdiction of this Court because, among other things, Defendant iWorld has its principal place of business in the State of New York  and in this judicial district, and each Defendant: (a) transacts business within this judicial district; and/or (b) commits the tortious acts of trademark infringement and unfair competition complained of herein in whole or in part within the State of New York.

17.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c), because the Defendant iWorld resides in this district, the Defendants conduct business in this district, and the acts giving rise to the claims asserted are also being committed within this district.

## PARTIES

18.     Plaintiff Supergoop is a Delaware Limited Liability Corporation with headquarters located at 149 Fifth Avenue, 8th Floor, New York, New York 10010.

19.     Plaintiff alleges that Five Below, Inc. is: (a) a Pennsylvania corporation, with an address of 701 Market Street Suite 300, Philadelphia, Pennsylvania 19106; (b) registered in New York as a foreign corporation; and (c) has retail store locations in New York, including in Manhattan, where, on information and belief, it sells products bearing the Infringing Logo and Infringing Trade Dress.

20.     Plaintiff alleges that iWorld are citizens of New York. Its principal place of business is New York with an address of 240 W. 37th St., Floor 10, New York, New York 10018.

## FACTS COMMON TO ALL CLAIMS

**Supergoop's Business**

21.    Since its inception in 2005, Supergoop has worked to bring SPF into the skincare foreground as a key component of daily health habits for all people.

22.    Supergoop began in classrooms in Louisiana and Texas.  Since then, the company has worked tirelessly to bring greater awareness of the need and importance of daily SPF product use, and to expand its consumer footprint.

23.    Supergoop products and educational efforts were key to revolutionizing the skincare and cosmetics industry by offering cutting-edge skin care products with SPF protection.

24.    Supergoop, in pursuing its mission to get the world's population to wear daily sunscreen, has created product options for every skin tone, type, and routine. From an invisible sunscreen primer to the first-ever eyeshadow with SPF, Supergoop has transformed what was once a seasonal product for single use into a skin care routine that customers love and use every day.

25.    Supergoop's success is a testament to the quality of its products. The company remains committed to its core mission of skin cancer prevention.

**Supergoop's Trade Dress**

26.    At the heart of Supergoop's skin-protecting philosophy and brand is its iconic and well-recognized original and distinctive SUPERGOOP! Logo, , and SUPERGOOP! Trade Dress, which Supergoop has used in commerce for two decades. The SUPERGOOP! Trade Dress includes, *inter alia*, the following elements as depicted in the examples of product packaging below: (1) the SUPERGOOP! Logo represented in the color blue (9 letter, two syllable word presented in blue handwritten-style font commencing in the letter "S," with a

central "g," and concluding with an exclamation point ( *Supergoop!* )); (2) outer packaging which depicts, and inner packaging which features a white tube or bottle displaying the SUPERGOOP! Logo in the upper portion of the product package; (3) the product name depicted in all caps centered directly below the SUPERGOOP! Logo (some of which appear in distinctive iridescent ink for various product names); (4) a product descriptor in smaller font directly below the product name; (5) the SPF number depicted within a circular design below the product name; (6) a contrasting yellow cap; and (7) the colors blue, white, and yellow as the take-away commercial impression of the packaging colorization. In the case of Supergoop's stick product called "Unseen Sunscreen Stick," the product packaging also includes a distinctive perfectly cylindrical shape and transparent packaging with the remaining above-mentioned elements the same.



27.     A disruptor in the sunscreen and cosmetic industry, Supergoop's line of products has made waves in the market for nearly two decades. The SUPERGOOP! Logo and SUPERGOOP! Trade Dress are featured across various product lines ranging from skincare serums and sunscreen sticks to lip balm and makeup.

28.     As a result of Supergoop's regular product innovations and new offerings under the SUPERGOOP! family of sunscreen, cosmetics, and skincare products, customers have grown accustomed to encountering the SUPERGOOP! Logo and variations of the SUPERGOOP! Trade Dress as source identifiers for Supergoop.

29.     Supergoop's distinctive, nonfunctional, source-identifying SUPERGOOP! Trade Dress is recognizable and widely recognized.  The SUPERGOOP! Trade Dress indicates to consumers that they are purchasing SPF skincare and cosmetic products of the highest quality with Supergoop as the exclusive source.

30.     Annual domestic sales and advertising of Supergoop's products bearing the SUPERGOOP Logo and SUPERGOOP! Trade Dress have been substantial, leading consumers to associate the overall look and feel of the packaging exclusively with Supergoop.

31.     Consumers can purchase Supergoop products online at Supergoop's website located at www.supergoop.com, and at a wide variety of brick-and-mortar stores, including stores located at shopping malls such as Ulta (also at www.ulta.com), Sephora (also at www.sephora.com), and Nordstrom (also at www.nordstrom.com).

32.     As a result of Supergoop's length and extent of use of the SUPERGOOP! Logo, Mark, and Trade Dress, along with, *inter alia*, the products' renowned and commercial success, extensive advertising and sales figures, and significant consumer recognition, Supergoop owns robust common law rights in the SUPERGOOP! Logo, Mark, and Trade Dress.

**Supergoop's Famous Registered SUPERGOOP! Trademark**

33.    Supergoop has continuously and extensively used the SUPERGOOP! Logo and Mark since its inception in 2005. The SUPERGOOP! Logo appears prominently, *inter alia*, at the top of each page on the Supergoop website located at www.supergoop.com, in all advertising and promotional materials for Supergoop's products, and on every Supergoop product packaging.

34.    Supergoop's SUPERGOOP! Logo and Mark are well-known and famous and have been for at least a decade. The public recognizes and understands that the SUPERGOOP! Logo and Mark distinguish and identify Supergoop's high-quality SPF skincare and cosmetic products. Indeed, the SUPERGOOP! Logo and Mark have achieved national fame and tremendous success and public recognition.

35.    Supergoop's products are sold in thousands of retail locations across the country, including at nationwide retailers Sephora (and www.sephora.com), Ulta (and www.ulta.com), Nordstrom (and www.nordstrom.com), Kohls (and www.kohls.com), and Blue Mercury (and www.bluemercury.com), as well as online at Amazon (www.amazon.com) and via Supergoop's website at www.supergoop.com, and at numerous resorts, spas, and hotels nationwide.

36.    In 2022, Supergoop's sales totaled $250 million, and have continued to increase significantly since then.

37.    In 2024, Supergoop's retail website located at www.supergoop.com had over 14 million site-wide visits.

38.    Supergoop and its products have won numerous awards and achieved widespread industry recognition as a result of their innovation and quality including being named Women Wear Daily's Greatest Skincare Products of All Time in 2024, being a ten-time Allure Reader's

Choice Award Winner, being a five-time CEW Beauty Award Winner, being a three-time Refinery29 Beauty Innovator Winner, being a four-time GQ Grooming Award Winner, being a five-time Esquire Grooming Award Winner, being a three-time Essence Best in Black Beauty Award Winner, being a two-time Oprah Daily Sun O-ward Winner and being an eight-time Women's Health Award Winner.

39. Supergoop's products have also been featured in articles published by numerous well-known national publications including Condé Nast Traveler, USA Today, The New York Times, Cosmopolitan, Allure, Glamour, Travel + Leisure, Oprah Daily, Men's Health, Harper's Bazaar, Glamour, Vogue, Teen Vogue, W Magazine, New York Magazine, Forbes, Marie Claire, Town & Country, and Women's Health, among others.

40. Supergoop promotes its brand by, *inter alia*, partnering with pop culture icons, events, and programming to bring its brand to wide and diverse audiences nationwide.

41. In February 2025, Supergoop cross-collaborated with HBO's cult favorite TV show White Lotus to offer an exclusive travel-ready kit sharing fan-favorite products from the




sun care brand:                                                                                          .

42.     In April 2024, Sabrina Carpenter, an American singer songwriter, featured Supergoop's products in her *Espresso* video, *available at* https://www.youtube.com/watch?v=eVli-tstM5E, which became a viral sensation, garnering millions of streams including 34 million streams on Spotify alone:





43.     Supergoop was a sponsor of NYC's 2024 Governor's Ball, the largest multi-day music festival held annually in New York City featuring 60+ of the world's best musical artists,

and a major event in NYC's summer entertainment lineup:





44.    In May 2023, Supergoop partnered with Equinox, a luxury fitness company and health club known for its high-end amenities, group fitness classes, and personal training, as well as its digital platform, to offer its sunscreen products in select Equinox Clubs as well as at The Shop at Equinox online, which is available at https://shop.equinox.com/collections/supergoop.

13

45.    In 2022, Supergoop collaborated with the popular family film *Minions: The Rise of Gru* offering a limited-edition version of its PLAY Everyday lotion:



**Supergoop! x Minions: The Rise of Gru is here!! Scheme up a summer of fun with this limited-edition PLAY Everyday Lotion SPF 50 that the whol...**



46.    Also in 2022, Supergoop collaborated with Amazon's popular tv series *The Summer I Turned Pretty* with a special Summer Glow-up SPF set:



47.    In Spring 2022, Supergoop partnered with Soho House, a global membership platform that provides physical and digital spaces for creative people to connect, socialize, and work, and is known for its exclusive member-only clubs with amenities like restaurants, pools, gyms, and event spaces in major cities around the world, to bring its message about daily sunscreen to Soho House members:



48.    Supergoop's Instagram account currently claims close to 800,000 followers. On TikTok, the hashtag #Supergoop has been viewed hundreds of millions of times, and many YouTube videos and Instagram reels featuring Supergoop! products have widespread audience views.

49.    For example, Sephora's Instagram reel promoting Supergoop! products has 33.6 million views:



50.    Supergoop's Instagram reels also receive millions of views, including 16.9 million views for the following:



And 10.4 million views for the following:



51.    Supergoop's recent YouTube video promoting its GLOWSCREEN Drops product

garnered 6.6 million views:



**NEW! Glowscreen Drops SPF 40**

6.6M views • 3 months ago

52.    In addition to common law rights arising from use of the SUPERGOOP! Trade

Dress and the SUPERGOOP! Mark, Supergoop owns: (a) U.S. trademark Registration No.

6,321,784 for SUPERGOOP! for *inter alia* "cosmetics containing sunscreen; skin care

preparations, namely, non-medicated sunscreen preparations, non-medicated lip care

preparations; non-medicated serum for use on skin; non-medicated cosmetic tanning

preparations; non-medicated skin care preparations with SPF protection; skin care products,

namely, sunscreen preparations; face lotion; body lotion; lip balm; eye cream; hand cream; body

butter; non-medicated skin pigment correcting creams; face powder; cheek rouge; makeup

setting powder; non-medicated tanning preparations in the nature of cosmetic tanning

preparations; body wash; facial cleansers; non-medicated sunscreen preparations; cosmetics,

namely, luminizers, eyeshadow primer and eyeshadow; cosmetics containing sunscreen; skin

care products, namely, non-medicated lip care preparations; sunscreen preparations for lips,"

with a first use in commerce of May 2005; (b) Incontestable U.S. Registration No. 5,091,242 for

the mark SUPERGOOP! for *inter alia*, "sunscreen preparations, face lotion, body lotion, lip

balm, eye cream, hand cream, body butter, non-medicated skin pigment correcting creams," with

a first use in commerce of 2005; (c) Incontestable U.S. Registration No. 3,840,059 for the mark

SUPERGOOP! for "sunscreen preparations," with a first use in commerce of May 2005; (d)

Incontestable U.S. Registration No. 5,100,453 for the mark *Supergoop!* for *inter alia* "sunscreen

preparations, face lotion, body lotion, lip balm, eye cream, hand cream, body butter, non-

medicated skin pigment correcting creams," with a first use in commerce of 2005; and (e)

Incontestable U.S. Registration No. 5,579,791 for the mark SUPERGOOP! PLAY for "sunscreen

preparations; non-medicated lip care preparations," with a first use in commerce of May 2014

(collectively the "SUPERGOOP! Registrations").

**Supergoop's Registered Trademark Rights in GLOWSCREEN**

53.     Supergoop also owns U.S. Registration No. 6,049,570 for GLOWSCREEN for

"skincare preparations, namely, non-medicated skin care products with SPF protection," with a

first use in commerce at least as of February 25, 2020 (Supergoop's "GLOWSCREEN Mark").

Supergoop currently offers a line of products under its GLOWSCREEN Mark, as follows:



**Five Below's Adoption and Use of the Infringing Trade Dress and the Infringing SUGARGIRL! and GLOWY FACE SCREEN Marks**

54.     On information and belief, Defendant Five Below, Inc. is a national retailer of various goods, akin to big-box retailers, with over 1,800 stores in 44 states across the country. Five Below, Inc. markets its products particularly to kids, tweens, and teens.

55.     On information and belief, Five Below, Inc. owns and operates the website located at www.fivebelow.com (the "Five Below Website") where it markets, promotes, and sells its products, including its SUGARGIRL! sunscreen products bearing the Infringing Trade Dress and Mark and the Infringing GLOWY FACE SCREEN Mark.

56.     On information and belief, iWorld, LLC is a manufacturer of various consumer goods, including the SUGARGIRL! line sunscreen products sold exclusively by Five Below, Inc.

57.     On information and belief, iWorld, LLC offers retailers the manufacturing of private label products.

58.     On information and belief, Five Below, Inc. commissioned iWorld, LLC to manufacture the SUGARGIRL! products bearing the Infringing Trade Dress and Mark and the Infringing GLOWY FACE SCREEN Mark on its behalf. The infringing SUGARGIRL! products are sold exclusively by Five Below, Inc.

59.     In the alternative, on information and belief, Five Below, Inc. intentionally induced iWorld, LLC to infringe the SUPERGOOP! Trade Dress and SUPERGOOP! Logo as well as the Supergoop GLOWSCREEN Mark. On information and belief, Five Below, Inc. contracted with iWorld, LLC for the purpose of supplying Five Below, Inc. with a copycat line of sunscreen and skincare products to trade on the goodwill and consumer recognition of the SUPERGOOP! Logo and SUPERGOOP! Trade Dress.

60.    On information and belief, in or around 2025, long after Supergoop began using its SUPERGOOP! Logo and SUPERGOOP! Trade Dress, the SUPERGOOP! Logo and Mark achieved nationwide fame, and it introduced to the market its GLOWSCREEN Mark and product line, Five Below began selling a line of products under the mark SUGARGIRL! that bear the Infringing Trade Dress, Mark, and GLOWY FACE SCREEN Mark.

61.    A side-by-side review of examples of the parties' products highlights Five Below's copying of Supergoop's distinctive and widely recognized SUPERGOOP! Trade Dress and famous SUPERGOOP! Logo:





62.     The similarities between the Infringing Trade Dress and Mark and the SUPERGOOP! Logo and Trade Dress include, for example: (1) the stylized SUGARGIRL! Mark, a two syllable, 9-letter word, with the first syllable in a capital "S," and the second syllable commencing in a lowercase "g," represented in an analogous handwritten-style,

concluding with an exclamation point, and depicted in the color blue (  ); (2) a

white tube or bottle with the stylized SUGARGIRL! mark on the upper portion of the tube or

bottle and the shape of a tube or bottle that mimics the SUPERGOOP! Trade Dress; (3) the

product name depicted in all caps centered directly below the stylized SUGARGIRL! Mark

(some of which appear in iridescent ink); (4) the SPF in a heart design below the product name;

(5) the product descriptor in smaller font directly below the product name; (6) the contrasting

yellow cap to the tube or bottle; and (6) the colors blue, white, and yellow as the take-away

commercial impression of the colorization. In the case of Five Below's SUGARGIRL! stick

product, the product packaging, like Supergoop's, includes a perfectly cylindrical shape and

transparent packaging with the remaining above-mentioned elements the same:                    .



63.    Also, Five Below's GLOWY FACE SCREEN product                     bears the

copycat name GLOWY FACE SCREEN, a product name and mark clearly intended to trade

upon Supergoop's registered GLOWSCREEN Mark and line of products.

64.    On April 22, 2025, Supergoop sent a letter to Five Below, Inc. expressing its

concern over Five Below's sale of its SUGARGIRL! line of products bearing the Infringing

Trade Dress and Mark.

65.    On April 25, 2025, Supergoop received an email from Five Below, Inc.'s in-house counsel indicating that the company was working on the matter and would revert to Supergoop the following week.

66.    Despite follow-up emails to Five Below, Inc.'s in-house counsel, as of May 28, 2025, Supergoop had not received a substantive response to its April 22, 2025, letter.

67.    On May 29, 2025, after another follow-up email from Supergoop, Five Below, Inc.'s in-house counsel responded in a brief non-substantive email, indicating that Supergoop would be contacted directly by iWorld, LLC.

68.    As of the date of this filing, Supergoop has not received a substantive response to its April 22, 2025 letter from Five Below, Inc., nor any contact from iWorld, LLC.

69.    The similarities between the parties' product packaging trade dress are profound and not accidental, nor are they limited to any single element—including, *inter alia*, the unique bottle/tube/stick shapes, the blue/white/yellow color scheme, the similar 9-lettered blue scripted "S" marks with the distinctive "!" appearing at the top of the bottle/tube, the placement of the house mark, product name, font used for the product name, location and font used for the product descriptor, and placement of SPF on the packaging, as well as the contrasting yellow cap on all products.

70.    Defendants' unauthorized use of the Infringing Trade Dress coupled with its confusingly similar Infringing SUGARGIRL! and GLOWY FACE SCREEN Marks on directly competitive products is likely to cause confusion, or to cause mistake, or to deceive, to the detriment of Supergoop and the public.

71.     Defendants' infringement of the SUPERGOOP! Logo, SUPERGOOP! Trade Dress, and GLOWSCREEN Mark has caused, and if not enjoined is likely to continue to cause, irreparable harm to Supergoop.

72.     The similarities between the SUPERGOOP! Logo and SUPERGOOP! Trade Dress, on the one hand, and the Infringing Trade Dress and Mark on the other, are so undeniable as to lead to the inescapable conclusion that Five Below's adoption, selection, and use of the Infringing Trade Dress, Mark, and GLOWY FACE SCREEN Mark was willful and intentionally designed to confuse consumers and trade on the goodwill associated with the SUPERGOOP! Logo, SUPERGOOP! Trade Dress, and GLOWSCREEN Mark.

73.     Moreover, the SUPERGOOP! Registrations, and U.S. Registration No. 6,049,570 for the trademark GLOWSCREEN, along with Supergoop's prominence in the sunscreen industry, provided Defendants with actual and constructive notice of Supergoop's rights in the SUPERGOOP! Logo, SUPERGOOP! Trade Dress and the GLOWSCREEN Mark, rendering Defendants' infringement of Supergoop's trademark and trade dress willful.

**FIRST CLAIM FOR RELIEF**
**(Infringement of Registered Trademark in SUPERGOOP! – 15 U.S.C. § 1114(1))**

74.     Supergoop incorporates the allegations in the preceding paragraphs of this Complaint as if fully set forth below.

75.     This cause of action is for infringement in violation of 15 U.S.C. § 1114(1) of Supergoop's incontestable federally registered U.S. trademark Registration Nos. 5,091,242 for the mark SUPERGOOP!, 3,840,059 for the mark SUPERGOOP!, 5,100,453 for the mark *Supergoop!*, and 5,579,791 for the mark SUPERGOOP! PLAY, as well as its federally registered U.S. trademark Registration No. 6,321,784 for SUPERGOOP! for the goods and services listed

in the registrations, including *inter alia* sunscreen and skincare preparations. The above-listed registrations for the SUPERGOOP! trademark are attached hereto as Exhibit A.

76.    Five Below's use of the confusingly similar mark SUGARGIRL! in a handwritten script featuring an uppercase S, and a lowercase central "g", a concluding exclamation point, all reflected in the color blue, for its directly competing sunscreen and skincare products used in combination with the Infringing Trade Dress, is likely to cause the public to be confused, mistaken, or deceived as to the affiliation, connection or association between Defendants and their sunscreen products, on the one hand, and Supergoop and its sunscreen products, on the other hand.

77.    Five Below's willful and unauthorized use of the confusingly similar SUGARGIRL! mark has damaged Supergoop in an amount to be determined at trial.  Such use has also caused Supergoop to suffer irreparable harm, and Supergoop will continue to be irreparably harmed unless and until Five Below's unlawful conduct is enjoined.  Supergoop has no adequate remedy at law.

### SECOND CLAIM FOR RELIEF
### (Infringement of Registered Trademark in GLOWSCREEN – 15 U.S.C. § 1114(1))

78.    Supergoop incorporates the allegations in the preceding paragraphs of this Complaint as if fully set forth below.

79.    This cause of action is for infringement in violation of 15 U.S.C. § 1114(1) of Supergoop's federally registered U.S. trademark Registration No. 6,049,570 for GLOWSCREEN for "Skincare preparations, namely, non-medicated skin care products with SPF protection."  The registration for the GLOWSCREEN Mark is attached hereto as Exhibit B.

80.    Five Below's use of the product name and mark GLOWY FACE SCREEN for its directly competing sunscreen and skincare product used in combination with the Infringing Trade Dress, is likely to cause the public to be confused, mistaken, or deceived as to the affiliation, connection or association between Defendants and their sunscreen product, on the one hand, and Supergoop and its sunscreen product bearing the GLOWSCREEN Mark, on the other hand.

81.    Five Below's willful and unauthorized use of the confusingly similar GLOWY FACE SCREEN mark has damaged Supergoop in an amount to be determined at trial.  Such use has also caused Supergoop to suffer irreparable harm, and Supergoop will continue to be irreparably harmed unless and until Five Below's unlawful conduct is enjoined.  Supergoop has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**(False Designation of Origin, False Association,**
**and Unfair Competition – 15 U.S.C. § 1125(a))**

82.    Supergoop incorporates the allegations in the preceding paragraphs of this Complaint as if fully set forth below.

83.    This cause of action is for false designation of origin, false association, and unfair competition in violation of 15 U.S.C. § 1125(a).

84.    By virtue of Supergoop's longtime, extensive, and continuous use of the SUPERGOOP! Trade Dress and variations thereof, along with, *inter alia*, significant commercial success, widespread consumer recognition, worldwide accolades from the skincare and cosmetic industry and press, and substantial advertising expenditures and sales over the course of almost 20 years, the SUPERGOOP! Trade Dress and variations thereof acquired distinctiveness long prior to Defendants' adoption of the Infringing Trade Dress.

27

85.    Supergoop's SUPERGOOP! Trade Dress and variations thereof also symbolize Supergoop and its high-quality SPF skincare and cosmetic products.

86.    If not enjoined, Defendants' use of the Infringing Trade Dress for competing SPF skincare and cosmetic products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Supergoop, or as to the origin, sponsorship, or approval of Defendants' goods or commercial activities by Supergoop.

87.    Defendants' willful and unauthorized use of the Infringing Trade Dress has damaged Supergoop in an amount to be determined at trial.  Such use has also caused Supergoop to suffer irreparable harm, and Supergoop will continue to be irreparably harmed unless and until Defendants' unlawful conduct is enjoined.  Supergoop has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### (Federal Trademark Dilution -- 15 U.S.C. § 1125(c))

88.    Supergoop incorporates the allegations in the preceding paragraphs of this Complaint as if fully set forth below.

89.    For decades, Supergoop has exclusively and continuously promoted and used the SUPERGOOP! Logo and Mark both in the United States. The SUPERGOOP! Logo and Mark therefore had become a famous and well-known symbol of Supergoop and its high-quality products well before Defendants manufactured and offered for sale products bearing the Infringing Mark.

90.    Defendants are making use in commerce of the SUGARGIRL! and

 marks that dilute and are likely to dilute the distinctiveness of the SUPERGOOP! Mark by eroding the public's exclusive identification of the SUPERGOOP! Mark with Supergoop, tarnishing and degrading the positive associations and prestigious

connotations of the SUPERGOOP! Mark, and/or otherwise lessening the capacity of the

SUPERGOOP! Mark to identify and distinguish Supergoop's goods.

91.    On information and belief, Defendants' SUGARGIRL! products are of an inferior

quality to those of Supergoop and, therefore, have and will continue to damage Supergoop's

reputation of excellence. This is particularly harmful when, as here, the products at issue are

applied directly to, and absorbed by, consumer's skin, so quality is profoundly important.

92.    Defendants' actions demonstrate an intentional, willful, and malicious intent to

trade on the goodwill associated with the SUPERGOOP! Logo and Mark and/or to cause dilution

of the SUPERGOOP! Logo and Mark to the great and irreparable injury of Supergoop.

93.    Defendants have caused and will continue to cause irreparable injury to

Supergoop's goodwill and business reputation, and dilution of the distinctiveness and value of

Supergoop's famous SUPERGOOP! Logo and Mark in violation of 15 U.S.C. § 1125(c).

Supergoop therefore is entitled to injunctive relief and to Defendants' profits, actual damages,

enhanced profits and damages, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116,

and 1117.

## FIFTH CLAIM FOR RELIEF
### (Unfair Competition – New York Common Law)

94.    Supergoop incorporates the allegations in the preceding paragraphs of this

Complaint as if fully set forth below.

95.    Defendants' acts complained of herein constitute unfair competition in violation

of the common law of New York, as they are likely to cause confusion, mistake, or deception as

to the affiliation, connection, or association of Defendants' products with those of Supergoop,

including with the SUPERGOOP! Mark, Logo and Trade Dress, or as to the origin, sponsorship or approval of Defendants' products.

96.     Defendants have willfully and maliciously engaged in acts of unfair competition.

97.     As a direct and proximate result of Defendant's unfair competition, Supergoop has suffered and will continue to suffer monetary damages and irreparable harm for which Supergoop has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
## (Common Law Trademark Infringement)

98.     Supergoop incorporates the allegations in the preceding paragraphs of this Complaint as if fully set forth below.

99.     As set forth herein, Supergoop owns all common law rights in and to the SUPERGOOP! Mark, Logo and Trade Dress.

100.     Five Below's use of the confusingly similar mark SUGARGIRL! in a handwritten script featuring an uppercase S, and a lowercase central "g", a concluding exclamation point, all reflected in the color blue, for its directly competing sunscreen and skincare products used in combination with the Infringing Trade Dress, is likely to cause the public to be confused, mistaken, or deceived as to the affiliation, connection or association between Defendants and their sunscreen products, on the one hand, and Supergoop and its sunscreen products, on the other hand.

101.     By imitating and using the SUPERGOOP! Mark, Logo and Trade Dress in commerce in connection with *inter alia,* the design, manufacturing, offering for sale, and sale of the Infringing Products, Five Below has infringed Supergoop's common law trademark rights.

102.     Five Below's bad faith and malice in its unlawful and improper actions, as set forth herein, are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, sponsorship, and association of Five Below's goods and services and to mislead actual and prospective consumers into falsely believing that Five Below's products from or is otherwise connected with or sanctioned by Supergoop when, in fact, it is not.

103.     As a direct and proximate result of Five Below's infringement, Supergoop has sustained and is likely to continue to sustain substantial monetary damages and irreparable injury to its business, reputation, and goodwill, for which Supergoop has no adequate remedy at law.

104.     By reason of the foregoing acts, Five Below is liable to Supergoop for common law trademark infringement and Supergoop is entitled to preliminary and permanent injunctive relief and monetary damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### (New York Trademark Dilution under NY Gen. Bus. Las § 360-1)

105.     Supergoop incorporates the allegations in the preceding paragraphs of this Complaint as if fully set forth below.

106.     Supergoop has extensively and continuously promoted and used the registered SUPERGOOP! Mark and Logo both in the United States and throughout the world, and the Mark and Logo had thereby become a distinctive, famous, and well-known symbol of Supergoop's goods and services well before Defendants designed, sourced, manufactured, imported, distributed, marketed, promoted, offered for sale, or sold the Infringing Mark. The SUPERGOOP! Mark and Logo are widely recognized by the general consuming public of the State of New York as a designation that Supergoop is the source of the goods bearing the SUPERGOOP! Mark and Logo.

31

107.    Defendants' unauthorized imitations of Supergoop's registered SUPERGOOP! Mark and Logo dilute and are likely to dilute the distinctiveness of Supergoop's SUPERGOOP! Mark and Logo by eroding the public's exclusive identification of this famous and well-known SUPERGOOP! Mark with Supergoop, and tarnishing and degrading the positive associations and prestigious connotations of the SUPERGOOP! Mark and Logo, and otherwise lessening the capacity of the SUPERGOOP! Mark and Logo to identify and distinguish Supergoop's goods and services.

108.    Defendants are causing and will continue to cause irreparable injury to Supergoop's goodwill and business reputation, and dilution of the distinctiveness and value of Supergoop's famous SUPERGOOP! Mark and Logo in violation of the New York anti-dilution statute, N.Y. Gen. Bus. Law § 360-1.

## **PRAYER FOR RELIEF**

WHEREFORE, Supergoop respectfully requests the Court to enter judgment in Supergoop's favor and against Defendants, as follows:

A.    Supergoop requests that this Court grant a preliminary and permanent injunction pursuant to the powers granted in under 15 U.S.C. § 1116, enjoining and restraining Defendants, their officers, agents, servants, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants from:

> a.    Manufacturing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, sell, market, advertise or promote any of Defendants' goods that use, incorporate or emulate the SUPERGOOP! Logo, Mark and/or the SUPERGOOP! Trade Dress or any confusingly

similar variations or colorable imitation of Plaintiff's SUPERGOOP!
Logo, Mark, and/or SUPERGOOP! Trade Dress, including, but not
limited to goods that use or incorporate the Infringing Trade Dress and the
Infringing SUGARGIRL! mark;

b.      Engaging in any activity that infringes Plaintiff's rights in its
SUPERGOOP! Logo, Mark, and/or Trade Dress, and variations thereof
including, but not limited to promoting and selling any product bearing the
Infringing Trade Dress and the Infringing SUGARGIRL! mark;

c.      Manufacturing, selling, marketing, advertising, promoting, or authorizing
any third party to manufacture, sell, market, advertise or promote any of
Defendants' goods that use, incorporate or emulate the GLOWSCREEN
Mark or any confusingly similar variations or colorable imitation of
Plaintiff's GLOWSCREEN Mark, including, but not limited to goods that
use or incorporate the GLOWY FACE SCREEN mark;

d.      Engaging in any activity that infringes Plaintiff's rights in its
GLOWSCREEN Mark and variations thereof, including, but not limited to
promoting and selling any product bearing the GLOWY FACE SCREEN
mark;

e.      Engaging in any activity constituting unfair competition with Supergoop;

f.      Making or displaying any statement, representation, or depiction that is
likely to lead the public or the trade to believe that (i) Defendants' goods
are in any manner approved, endorsed, licensed, sponsored, authorized, or

franchised by or associated, affiliated, or otherwise connected with Supergoop or (ii) Supergoop's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

g.    Registering or applying to register any trademark, service mark, domain name, trade name, trade dress, or other source identifier or symbol of origin consisting of or incorporating any mark that infringes or is likely to be confused with Plaintiff's SUPERGOOP! Logo, Mark, and/or Trade Dress, including the Infringing Trade Dress and the Infringing SUGARGIRL! mark;

h.    Registering or applying to register any trademark, service mark, domain name, trade name, trade dress, or other source identifier or symbol of origin consisting of or incorporating any mark that infringes or is likely to be confused with Plaintiff's GLOWSCREEN Mark, including the GLOWY FACE SCREEN mark;

i.    Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (h).

B.    That Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

C.    That Defendants have engaged in unfair competition and dilution in violation of New York statutory and/or common law.

D.      Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Supergoop's goods.

E.      Directing Defendants to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials, whether physical or digital, that feature or bear any copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's SUPERGOOP Logo, Mark, and/or Trade Dress, including the Infringing Trade Dress and Infringing SUGARGIRL! mark, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendants' goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing any copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's SUPERGOOP! Logo, Mark and SUPERGOOP! Trade Dress, including the Infringing Trade Dress and Infringing SUGARGIRL! mark, and to immediately remove them from public access and view.

F.      Pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), directing Defendants to file with the court a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction; and to serve such report upon

Supergoop's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the court may direct.

  G. Directing that Defendants account to and pay Supergoop all profits realized by their wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Supergoop for the damages caused thereby.

  H. Awarding Supergoop an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), as the Court finds appropriate to deter any future willful infringement.

  I. Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Supergoop its costs and reasonable attorney's fees thereunder (15 U.S.C. § 1117(a)).

  J. Awarding Supergoop prejudgment and post-judgment interest on the foregoing sums.

  K. Awarding any other relief that the Court deems just and proper.

Dated: June 25, 2025

/s/ *Susan M. Sajadi*
Susan M. Sajadi (No. 4438461)
Julia Anne Matheson (*pro hac vice* forthcoming)
Elissa Brockbank Reese (*pro hac vice* forthcoming)
Potomac Law Group, PLLC
1717 Pennsylvania Ave NW, Suite 1025
Washington DC 20006
Telephone: (917) 238-0990
ssajadi@potomaclaw.com
jmatheson@potomaclaw.com
ereese@potomaclaw.com

***Attorneys for Plaintiff Supergoop LLC***